[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 28, 2007
THOMAS K. KAHN
CLERK

No. 06-13081
Non-Argument Calendar

_____

D. C. Docket No. 05-00341-CR-T-24-EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES LAWRENCE LIGHT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(February 28, 2007)**

Before TJOFLAT, ANDERSON and HULL, Circuit Judges.

PER CURIAM:

James Lawrence Light, who represented himself at trial in the district court,

appeals with the aid of counsel his conviction and 262-month sentence for possession with intent to distribute more than five grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). Light raises two issues on appeal. First, Light argues that the district court erred in finding that he waived his Sixth Amendment right to counsel knowingly and intelligently.[1] Second, Light argues that there was insufficient evidence to support his conviction because the only evidence against him was the testimony of Corey McDonald ("McDonald"), a twice-convicted felon who testified in the hopes of receiving a reduction in his sentence. We reject Light's arguments and affirm his conviction and sentence.

## I. STANDARDS OF REVIEW

We review <u>de novo</u> a district court's conclusion that a defendant's waiver of counsel is knowing, voluntary, and intelligent. <u>See</u> <u>United States v. Kimball</u>, 291 F.3d 726, 730 (11th Cir. 2002). On direct appeal, the burden is on the Government to prove that the waiver is valid. <u>See</u> <u>Brewer v. Williams</u>, 430 U.S. 387, 404, 97 S. Ct. 1232, 1242 (1977).

"Whether there is sufficient evidence to support a conviction is a question of law which this Court reviews <u>de novo</u>." <u>United States v. Charles</u>, 313 F.3d 1278, 1284 (11th Cir. 2002) (citation omitted). Viewing the facts and all reasonable

---

[1] Light concedes that his waiver was voluntary.

2

inferences drawn therefrom in the light most favorable to the Government, <u>see</u>

<u>United States v. Hansen</u>, 262 F.3d 1217, 1236 (11th Cir. 2001), we ask whether the

jury could have found the essential elements of a crime beyond a reasonable doubt,

<u>see</u> <u>Charles</u>, 313 F.3d at 1284.  "Where the government's case is based on

circumstantial evidence, 'reasonable inferences, and not mere speculation, must

support the jury's verdict.'" <u>Id.</u>  (internal citations omitted).

## II.  DISCUSSION

A.      *Waiver of Sixth Amendment Right to Counsel*

Although the Sixth Amendment affords criminal defendants the right to

defend themselves, "in most criminal prosecutions defendants [can] better defend

with counsel's guidance than by their own unskilled efforts." <u>Faretta v. California</u>,

422 U.S. 806, 832-34, 95 S. Ct. 2525, 2539-40 (1975).  Before a defendant is

allowed to waive his Sixth Amendment right to counsel,  he "should be made

aware of the dangers and disadvantages of self-representation, so that the record

will establish that he knows what he is doing and his choice is made with eyes

open." <u>Id.</u> at 835, 95 S.Ct. at 2541.  A pretrial hearing is the ideal method for

"assuring that a defendant understands the consequences of a waiver." <u>Kimball</u>,

291 F.3d at 730.  The factors relevant to the inquiry of whether a defendant should

be allowed to represent himself at trial include:

3

1) the defendant's age, health, and education; 2) the defendant's contact with lawyers prior to trial; 3) the defendant's knowledge of the nature of the charges and possible defenses and penalties; 4) the defendant's understanding of the rules of evidence, procedure and courtroom decorum; 5) the defendant's experience in criminal trials; 6) whether standby counsel was appointed and, if so, the extent to which standby counsel aided in the trial; 7) any mistreatment or coercion of the defendant; and 8) whether the defendant was attempting to manipulate the trial.

Id. at 730-31.

During a Faretta inquiry, a district court is not required to "estimate what a defendant's actual punishment under the sentencing guidelines will be," but should "ensure that a defendant understands the risks of defending himself . . . [and] this purpose is satisfied when a defendant is aware of the maximum penalty he faces." Id. at 732. Finally, the "purpose of a Faretta inquiry is not to determine the extent of a defendant's legal knowledge or to determine how good of a trial advocate a defendant will be." Id. at 731. Instead, a determination must be made about "whether [the defendant] understood that rules do exist to govern the procedure of a trial, the introduction of evidence and the behavior of advocates and to determine whether [the defendant] understood that he would be bound by those rules." Id.

In this case, Light was 31 years old, had never been treated for alcohol or drug abuse or for mental illness, possessed a GED, and completed two years of undergraduate paralegal studies. Light met with an attorney prior to the hearing

4

and turned down the magistrate's offer to consult with another attorney about self-representation. Although Light knew little about the substance of the Federal Rules of Criminal Procedure or the Federal Rules of Evidence, he understood that the rules existed and that they would govern his trial. Light was informed of the maximum penalty he faced if convicted, and was, therefore, aware of the risks of defending himself. Light had experience in criminal trials because he recently and successfully defended himself in two jury trials. A standby attorney was appointed for Light, was available for consultation during trial, and made arguments on Light's behalf during the sentencing phase. There is no evidence that Light was attempting to manipulate the trial or that there was any mistreatment or coercion of Light. A review of the record, therefore, establishes that Light was aware of the dangers and disadvantages of self-representation and that his choice was made with his eyes open. Accordingly, in light of all of the factors, the district court did not err in its conclusion that Light waived his Sixth Amendment right to counsel knowingly, voluntarily, and intelligently.

B. *Sufficiency of the Evidence*

The second issue on appeal is whether there was sufficient evidence to support Light's conviction. Light argues that the evidence introduced at trial was insufficient because the Government's case against him centered largely on the

5

testimony of McDonald, a Government informant whose testimony Light says is not credible.

In order to sustain a conviction for possession with intent to distribute, the Government must show (1) knowing possession, and (2) an intent to distribute. United States v. Perez-Tosta, 36 F.3d 1552, 1559 (11th Cir. 1994). Intent to distribute may be inferred from the quantity of drugs. Id. To support a conviction based on possession with intent to distribute a controlled substance, the Government does not have to show that the defendant had knowledge of the particular drug involved or the quantity of drug involved, but must prove that the defendant was aware that a controlled substance was involved. United States v. Gomez, 905 F.2d 1513, 1514 (11th Cir. 1990).

Determinations regarding witness credibility are within the exclusive province of the jury and may not be revisited unless a witness's testimony is "incredible as a matter of law." United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir.1997). Testimony is incredible as a matter of law if it is "unbelievable on its face," or includes "facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature." Id.

McDonald's testimony was not incredible as a matter of law. His testimony related to matters that he physically observed, and the jury was aware of

6

McDonald's criminal history and his motivation for cooperating with the Government. The jury was fully entitled to credit McDonald's testimony if it so chose. Moreover, the testimony from the Plant City Police Detective and the Government's other evidence, including audio and video surveillance tapes, bolstered McDonald's testimony. McDonald testified that after speaking to Light on the telephone, he arranged to meet Light at his house. Both McDonald and the Detective testified that McDonald and his vehicle were searched prior to the encounter and that there were no drugs found. The video showed that Light arrived as scheduled, dropped something on the floor of the porch and exchanged something with McDonald, which McDonald testified was the money given to him by the Detective. Although not completely clear, the audio tape of the transaction corroborated McDonald's testimony that he and Light discussed the quantity and quality of the crack cocaine. After the transaction, McDonald presented the drugs to the Detective and was searched again, but no money was found either on his person or in his vehicle. Thus, we determine that, taking the evidence in the light most favorable to the Government, it was not unreasonable for the jury to find that McDonald's testimony was credible because it was not unbelievable on its face, it was corroborated by other evidence, and it helped to establish the elements of the crime charged. Accordingly, the Government introduced evidence sufficient to

7

prove beyond a reasonable doubt that Light knew he possessed a controlled substance and that he intended to distribute it.

## III.  CONCLUSION

After carefully considering the record and the parties' briefs, we find no reversible error.  For the reasons stated above, Light's conviction and sentence are affirmed.

**AFFIRMED.**